Good morning, Your Honors. May it please the Court, my name is Roger Glenke. I represent the appellant Little Mountain Corporation. At this time I'd like to reserve five minutes. Okay, please watch your clock, it goes down. Little Mountain Corporation, which was the petitioner below, is asking the Court to reverse the decision of the United States Tax Court. That Court upheld the Commissioners of Internal Revenue Services' denial of a compensation deduction for consulting fees, which was claimed on Little Mountain's 2011 income tax return. The Tax Court held that Little Mountain had failed to substantiate the sums for which a deduction was sought, and to demonstrate that they were in fact compensation and that they had actually been paid. The Tax Court also held that Little Mountain had not shown that the compensation expenses were ordinary, necessary, reasonable, and it also applied a heightened level of scrutiny in making its determination. How was it that they were ordinary, necessary, because he took roughly $800 and some thousand dollars in payments. Every one of those invoices, so to speak, says pay me $18,522 in this order, $4,200, $3,700, all these odd numbers, all of which are under the SARs, the $10,000 limit. How is it that he, there's nothing there, they're all the same thing, doesn't say anything about what he did or does other than a generic description? Yes, there is a generic description, but the reason for that is because Franklin Sanders, who was the provider of the services, doing business through his DBA, had been doing this for 30-some years. As the Court may be aware, Little Mountain purchased his businesses some 15 years earlier, and Franklin Sanders had been doing this for 30-some years. So he knew what he was doing, he knew that, and both sides have testified to this, that his tasks, his daily tasks, were so repetitive and usual that there was no need for a particularized description of the services that he rendered on every individual invoice. But it is Little Mountain's burden to prove that it's compensation. Yes. And he testified, he said, I wouldn't call it compensation. He did say that. The reason for him saying that is unclear to me. However, I would point out to the… It might have something to do with, you know, this is, it seems that the tax court was pretty clear in saying this is a very peculiar situation because this individual hasn't paid, filed income taxes for many, many years. Right? And it does seem to be the elephant in the room. Do you want to address that? I'm sorry, I had a little trouble hearing your question. I'm sorry. So when we look at Little Mountain's case, to just follow up on Judge Malloy's question, this individual testified that he wouldn't call this compensation. Yes. All right. So that's the first problem. I think you have to get around that. If nothing else, why isn't that, why doesn't that defeat the claim? Well, let me say this about that statement. Our belief is that the tax court essentially cherry-picked that phrase to use in its opinion. What it failed to do was also recognize the statement which immediately follows the testimony that you just pointed out. Franklin Sanders testified on cross-examination that I was paid for the work that I did, close quote, I was paid in exchange for the work that I did. But didn't he, wasn't, he didn't pay income taxes on that amount of money if it was compensation. And he should have paid some income taxes on that. There should have been a 1099. Yes. The fact that Mr. Sanders may or may not have paid income taxes on the monies he received is a separate issue. We believe that has no bearing upon the corporation's right to a deduction for the amounts that were paid. The fact that a 1099 was not issued is considered in our cases to be relevant to determination of whether there was compensation that was paid. My understanding of the law, Your Honor, is that a Form 1099 is not a prerequisite to a deduction for compensation. It's not a prerequisite, but it's a factor. There's a number of factors that the courts look at.  And that's one of the factors. It may be. In any event, we believe that the tax court's decision was wrong, and this court should reverse for two reasons. First, it should also find, it should find that the tax court's rulings regarding the compensation and paid issues were clearly erroneous. Because the tax court applied an incorrect standard for the quantum of proof required to substantiate those facts. Second point, as to the ordinary, necessary, and heightened level of scrutiny theories, those issues were not tried by the parties. And they were never asserted by the commissioner until they appeared in the commissioner's simultaneous opening brief, which was filed after the trial concluded. What difference would it make if you had a different standard? It seems to me the facts are the same here. And whether it was additional scrutiny or not, it's still a question of if this isn't compensation and it's not income, what is it? Our position is that it was compensation to Mr. Sanders. But he said it wasn't. No. He made that statement in his testimony at trial. He said, quote, I wouldn't call it compensation. But then immediately after that, Your Honor, he testified, as I've previously indicated, that he was paid for the work he did and he was paid in exchange for the work he did. That is a clear statement of whether the amounts he received, his view, was that it was compensation. Right. The reason he said that, he may have misunderstood the word compensation at that time. I don't know the answer to that. Well, it's a self-serving statement. But were the payments tied to corporate profits instead of services? The payments were tied to the services that he rendered. Were they in accordance with contractual obligations? They were. There was an oral contract between the parties, Little Mountain. There's no written contract here. Well, it's in the minutes. Arguably there was. Well, it's a bad argument. It's in the minutes of the, excuse me, go ahead. No, I know it's in the minutes, but then the argument in the briefing is it's an implied contract. Yes. Yes. There is reference to the duties that he is to perform, which is contained in the minutes. And then the payments were made whenever he wanted them. No, I think they were made with some regular periodicity. Well, he submitted those whenever he wanted it and whenever he needed money. Well, he submitted it when he had performed the work that had been performed. There were no other employees, as I take it? The business continued to operate just as it always had. Is that right? The business, well, as to other employees, there was another employee who performed office and managerial duties. His wife. His wife who cut the checks. Yes, that is correct. Okay. So, and that is as it had always been. Is that right? I don't know the answer to that. I'm only aware of the facts and circumstances as they pertain to this particular year. I don't know the entire history and who was working for it at what point. All right. What was the purpose of the payment arrangement if it wasn't to avoid income tax? The purpose of the payment arrangement was simply to pay him for the services that he rendered. The company received $63 million in gross receipts solely due to his efforts. And the company paid him 1.4 percent approximately of that amount in compensation. So our view is that it's very clear that it was compensation because Mr. Sanders was the only one who was providing those services. He worked 50 to 60 hours per week. His tasks were numerous. They included writing a monthly 15,000-page newsletter, writing a daily technical newsletter, interfacing with the customers, developing trading strategies, preparing trade confirmations, handling all the marketing of the business. Was there ever a check made to Franklin Sanders? My understanding is and recollection is that the checks were either made payable to AFC, which is his doing business as entity, which stands for Always Frank Consulting, or they were made payable to Mr. Sanders. Excuse me. Cash. Excuse me. Mostly the checks. Let me back up. The checks were made payable to cash. Yes. I'm sorry. I'm confused. Okay. The checks were made payable to cash. He didn't have a bank account. He did not have a bank account, and that's why he wanted them made payable to cash. Counsel, is it a clearly erroneous standard whether this was compensation or not? Is it a clearly? Is it a clearly erroneous standard of review? Yes, because we believe the evidence provided was absolutely sufficient to establish. So here's my question. Forgive me for interrupting, but I want to make sure you have an opportunity to respond. Yes. I'm trying to figure out why you think there was error given that standard of review solely based on, if nothing else, he testified he would not call it compensation. Well, a witness can be confused at trial. And, again, no follow-up question was posed to him at the time he made that statement as to why he felt that was the case. But I've already indicated to the court the two statements he made following it up, which clearly show that he was paid for the services he performed. So you think it was taken out of context? Forgive me. You think it was taken out of context?  Well, the full context was not presented in the court's opinion. Okay. Forgive me. My question is, is there any evidence that the cash made its way to Franklin himself? Yes, there is. Was that evidence? The testimony of both Franklin and Sanders and his wife was that when a check was made payable to cash, he would turn it over to either one of his relatives, probably his daughter, more often than not, Liberty Vane. She would cash? She would cash it more often than not for him because he wanted to avoid the one-and-a-half-hour trip from their home in West Point, Tennessee, to the bank, First Volunteer Bank, in Lawrenceburg, Tennessee, which was about an hour-and-a-half round trip all the time. Right. But what was the evidence that they actually gave him the cash? They both testified to that fact. And what did he do with the cash? I don't know the answer to that, but I presume he used it for whatever purposes he felt it was needed for. Okay. You want to reserve 5 minutes? Yes. You have 3. I'm sorry. I didn't even notice. I apologize. Okay. You can reserve the 3. Okay. Thank you. May it please the Court, I'm Curtis Pett, representing the Commissioner of Internal Revenue. Your Honors, the Tax Court's finding that the payments in question, even if they were actually made to Mr. Sanders, was not compensation is not clearly erroneous. The difference between profits and compensation is that profits are income over the amount of expenses that were incurred in generating that income. Compensation is the fair market value of the employee's services. A business generates profits by leveraging its employees' productivity and its other assets, including goodwill, which includes items such as reputation and customer lists and the like. Little Mountain stipulated that the business here included substantial goodwill. The determining factor in classifying a payment as compensation is that it is based on the extent and nature of the services rendered applied against a predetermined compensation rate. Do we know what that is here, the predetermined compensation rate? There is none. Not per day, not per hour? No annual, no anything. It was totally open-ended. I thought that he broke it down to an hourly $240-some dollars per hour. That was an after-the-fact computation. There was no predetermined rate. There's no demonstrated correlation between the payments and any particular services rendered, and there's no rate. For all the record shows, Mr. Sanders just issued these invoices based on whatever profits were laying in the corporate bank account at the time. There was no written contract, so if we were to try to figure out what the terms were, is there anywhere to look other than the minutes? No, Your Honor, that's all there is. The record is devoid of any probative evidence that these payments were compensation, and under these circumstances, the tax court's finding that they were not cannot be said to be clearly erroneous. But we know that he continued to do the same work both before and afterwards, so he was providing services, right? Yes. And I'm sure that there is some amount that he could have been compensated for those services and some amount that, I mean, the company would not have made the very large sum of money it made had he not continued to do the newsletter and people and offer his advice and do all of that, right? That's right, but that was a situation before this new arrangement, and it was the taxpayer's burden to demonstrate what part of those payments represented compensation. And it just basically took an all-or-nothing approach, saying, well, he took what he took, and it was worth what it was worth. But that's not evidence of compensation. You would have a predetermined rate. It's not based – you don't just take the profits. That was a situation before this arrangement. He had a sole proprietorship, and he could help himself to the profits at will. As I understand it, he didn't – he hadn't been paying personal income taxes for 30 years or something. That's correct. And so that situation remained the same before and after as well. Right. His testimony makes that very clear. Right. So is the IRS trying to go after him individually for failure to pay income taxes? I'm not aware of that, but he didn't file returns, so there would be no statute of limitations. So the IRS would be free to pursue that at any point in time. So if the payments aren't compensation, what are they? It's not the government's burden. They appear to be a distribution of profits, but, you know, there are a number of theories. They weren't pursued in this case, didn't need to be pursued in this case. This case is all about whether Little Mountain sustained its burden of substantiating the claim deductions, and it did not. It was not the government's burden to demonstrate the exact nature of the distributions. So are you saying there could be compensation, but he just didn't prove it? I can't rule that out. Yeah, I wouldn't – it's possible that he could have – this arrangement, it could have been structured. He could have had an arrangement saying that I'm entitled to $100,000 a year or a certain hourly rate or something like that, but they just didn't do that. And then that would have been deducted from the profits of the corporation, and presumably there'd be something left over. I mean, if there was some set arrangement, there'd be something left over that would be sitting in the corporation still. Right, and it could be paid out as dividends, and the corporation's family-owned. There's all types of complex theories that could be applied, but we didn't need to and did not get into all those matters for purposes of this case. But whether or not part of these payments could properly be substantiated as compensation is meaningless here because they had the burden of doing that, and they failed to do that, and the tax court considered all the facts and circumstances and applied its expertise and experience and reached the conclusion that they hadn't satisfied that burden and that there's been nothing shown that would demonstrate clear error in the tax court's conclusion. The only two issues that we're to look at on this appeal is whether it was compensation for services rendered and actually paid to him. We're just looking at those two issues? That's correct, yes. Because there's a lot of other issues out there. A lot of side issues, but if it was not compensation, which there's no evidence that it was, that's determinative. But even if it was, the tax court correctly found that there was no – or found that the evidence did not establish that the money ever made it into Mr. Sanders' hands to begin with. The testimony regarding the third parties and the different money trails and everything, the tax court did not find that to be convincing evidence that this money was actually paid to Mr. Sanders, and that finding also was not clearly erroneous. But the core holding, if there's no predetermined compensation rate and the payments were not tied to any particular services performed, one plus one equals two, it's not compensation, so that determines the case. Counsel, since you are here and you have several minutes left, I appreciate that you're relying here just on whether there was payment and whether it was compensation, but there is another argument that opposing counsel has made, which is that the government basically hid the ball, and I'm sure you know what I'm referring to, that he got very late notice of these other theories. And since you're just relying on the ones that were in the written notice, I think it's not a huge problem for you today. But it is concerning to me that the position of the taxpayer is that the government was not forthcoming with its theories. Do you want an opportunity to respond since you're here today? Yes. The requirement to substantiate claimed tax deductions and the requirement that they be reasonable in amount is one of the most fundamental requirements of the Internal Revenue Code. A taxpayer claiming a tax deduction who claims to be unaware of those requirements simply cannot be taken seriously. These are, I mean... What about the colloquy in the transcript that he points to where the government's counsel, but where the response was from the government, you know, that we're not going to give our other theories, and then taxpayers' lawyers said, well, that's been a problem for us. We haven't been able to get the government to tell us what their theories are going to be. That was concerning to me, and I'd like to hear your response. Yes. Those theories had to do with, well, this arrangement, his wife was like a general. So it ended up that the children were the beneficiaries of a trust as to which his wife was the settlor. So there could be an argument that the whole thing by attribution rules, he really owned the corporation where he says he wasn't a shareholder. But that was not an issue that was, we dropped that issue. That issue was not pressed or ruled on by the tax court, and it was not necessary to do that. The fact that there was no substantiation that the payments were compensation really alone disposes of the case, regardless of that, and their argument that heightened scrutiny. The tax court, as we all well know, as a finder of fact, is charged with the responsibility of considering all of the surrounding facts and circumstances and applying its expertise and its experience to reach a decision as to what is claimed to be true is in fact true. And there is no rule of law applicable in these circumstances that in discharging that duty, it's required to close its eyes to the surrounding facts and circumstances. It just makes no sense. I wasn't casting any aspersions in the direction of the tax court. I just wanted to express that I found it concerning that there is, I think, a colorable argument that the taxpayer had difficulty getting the government's theories. Having said that, were you relying on some of those theories that Judge Wardlaw was referring to? I think there may be more to talk about today, but I just wanted to convey that impression. I think the commissioner did abandon those theories. We abandoned those attribution rules and all that. It wasn't necessary, and we abandoned it, and it didn't affect the case. They're saying also that the tax court was suspicious of the entire arrangement and improperly considered Mr. Sanders' motives and things like that. Those aren't really new issues. Those are just part of the surrounding facts and circumstances. The new issues related to code sections regarding what ownership can be attributed to who for purposes of looking through trust. And you're not relying on those today in your argument? Absolutely not, no. Thank you. Unless the court has any further questions, we will rely on a brief. No. Okay. Thank you very much, counsel.  First of all, I do want to express to the court exactly what evidence there was that was provided with respect to the issue of it being compensation and what documentary evidence was provided by the taxpayer, which was very thorough and very complete. It included the testimony of the service provider, the testimony of the service recipient, the canceled checks, which were contemporaneous with the payments that were made, the Little Mountains general ledger, Little Mountains bank statements. All of that combined worked and tied together to support the fact that these amounts were actually paid to Franklin Sanders and that they were, in fact, compensation. But they weren't actually paid to Mr. Sanders. They were paid to cash, right? The checks were written to cash, but the cash was then delivered to Mr. Sanders. Wouldn't your argument be better if they were actually paid to him? I don't know whether it's better or not better, and I'm not prepared to really state an opinion on that, but the facts are that the cash was eventually given to Mr. Sanders, and all parties acknowledge that. With respect to the failure to file returns, I find that somewhat concerning. The corporation did file its returns. Mr. Sanders may or may not have, but the point is that his failure to file a tax return should have no impact as to whether or not Little Mountain Corporation is entitled to a deduction for the amounts that it did pay for services rendered. And then, finally, with respect to this being a distribution of profits, I don't believe you can fairly characterize it as a distribution of profits or a constructive dividend or something of that nature. Mr. Sanders was not a shareholder of Little Mountain Corporation. As I've already explained, he worked a great number of hours during the week, 50 to 60 hours a week, and he did perform these services, yes, both before the corporation was formed and after. But he did do the work. He was paid 1.4 percent of the $63 million in gross receipts that the corporation received, and I don't think that that is an outrageous rate of payment. As the Court has mentioned, it boils down to about $250-some dollars an hour. Given the great success that he had for this corporation, I think the payments were well-deserved. And with that, I would ask that the Court reverse the decision of the United States Tax Court. All right. Thank you, Counsel. Little Mountain Corporation v. The Commissioner of IRS is submitted.
judges: Wardlaw, Christen, Molloy